**GOLDEN RULE INSURANCE**

v.

**Donald STRAUSS.**

**Civ. A. No. 93–4067.**

United States District Court,
E.D. Louisiana.

April 21, 1995.

William Everard Wright, Jr., Judy Lynn Burnthorn, Deutsch, Kerrigan & Stiles, New Orleans, LA, for plaintiff.

E. John Litchfield, Ira S. Kohlman, Berrigan, Litchfield, Schonekas, Mann & Clement, New Orleans, George B. Gaudet, Jr., Leonard J. Cline, Metairie, LA, for defendant.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is defendant's motion in limine to prevent the introduction of any evidence by plaintiff as to a bankrupt-

cy court ruling in 1982 as to defendant and his wife.[1] Having reviewed the memoranda of the parties, the record and the applicable law, the Court DENIES defendant's motion.

## Background

In February 1993 defendant Donald Strauss applied for health insurance with plaintiff. Strauss filled out an application and answered no to a question as to whether, in the previous 10 years, he had "any indication, diagnosis, or treatment of ... diabetes, sugar in the urine or blood...." Strauss also told one of plaintiff's underwriters that he had never been told he was a diabetic.

Later, after suffering a heart attack, Strauss submitted various medical expenses to Golden Rule for payment. Golden Rule refused to pay and instead filed this declaratory judgment action seeking to have the certificate of insurance rescinded under LSA–R.S. 22:619. Golden Rule claims that Strauss made material misrepresentations in applying for the health insurance. Strauss denied the allegations and also filed a counterclaim seeking award of the medical expenses for treatment of his heart attack.

Defendant Strauss now moves to exclude from evidence the findings of the bankruptcy court concerning Strauss and his wife from 1983. Plaintiff apparently desires to introduce the findings from an adversary action brought by creditors in the bankruptcy proceeding against defendant and his wife. In that opinion the bankruptcy judge found: "The overall picture [of debtors' affairs] ... is a pattern of deliberate, systematic and pervasive obfuscation, evasion and perjury." Memorandum Opinion and Reasons for Judgment, *Jefferson Bank and Trust Company v. Donald B. Strauss et al,* Adversary No. 83–0069–B c/w 83–0073–B, United States Bankruptcy Court, Eastern District of Louisiana, September 21, 1983, p. 4.[2] Among the specific findings of fact were that certain items had been omitted from the Strauss' verified Statement of Affairs and that the debtors had testified falsely at a meeting of the trustee and creditors. *Id.* at 5–9. Further, the

debtors testimony at and after that meeting as well as the debtors' schedules concealed property. *Id.* at 9–10. "The debtors testified at the ... meeting and the subsequent ... examinations, knowing that their testimony was materially and substantially incomplete, false and misleading, with reckless disregard for the truth, and with the intent to hinder, delay and defraud the trustee and their creditors." *Id.* at 10–11. The bankruptcy judge ultimately denied the Strauss' discharge of the debts and claims which they sought. *Id.* at 22.

## Law and Application

Under LSA–R.S. 22:619.A., any oral or written misrepresentation or warranty made in the negotiation of an insurance contract, either by the insured or his representative, shall not void the contract "unless the misrepresentation or warranty is made with the intent to deceive." Section B of that statute further provides that all statements in any application for health insurance shall, absent fraud, be deemed representations and not warranties. Further, the falsity of any such statement shall not bar the right to recover under the health insurance contract unless the false statement "was made with the actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." LSA–R.S. 22:619.B.

Golden Rule seeks to use the findings from the bankruptcy court to show intent to deceive under F.R.Evid. 404(b). Alternatively, Golden Rule seeks to use the findings under F.R.Evid. 608(b) or for general impeachment if Strauss testifies.

## A. Rule 404(b)

Although evidence of similar acts is inadmissible under rule 404(b) "to prove the character of a person in order to show conformity therewith," such evidence is admissible under 404(b) "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[3]

---

1. Defendant's wife is not a party to this action.

2. Attached to plaintiff's memorandum in opposition, R.Doc. 71.

3. Rule 404(b) is the evidentiary standard for both civil and criminal cases. *See Dial v. Travelers Indemnity Company,* 780 F.2d 520, 522 (5th Cir. 1986).

Fifth Circuit case law breaks into three steps the determination of whether evidence of other crimes, wrongs or acts are admissible. *United States v. Beechum*, 582 F.2d 898, 911–13 (5th Cir.1978). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403." *Id.* at 911. Third, "the line of reasoning that deems an extrinsic offense relevant to the issue of intent is valid only if an offense was in fact committed and the defendant in fact committed it. Therefore, as a predicate to a determination that the extrinsic offense is relevant, the [proponent] must offer proof demonstrating that the [opponent of the evidence] committed the offense." *Id.* at 912–13.

*Dial,* 780 F.2d at 523.

■ The decision whether to admit extrinsic evidence of similar acts is within the discretion of the trial court. *United States v. Merkt,* 794 F.2d 950, 963 (5th Cir.1986).

■ The Court need not spend an inordinate amount of time on the first and third *Beechum* factors. The Court finds that the findings of the bankruptcy court are certainly relevant in the present case to whether Strauss intended to deceive Golden Rule. While the actual underlying acts are different, with one arising in the context of verified statements and schedules and testimony in bankruptcy proceedings and the other involving an application for health insurance, the specific issue of intent to deceive made orally or in writing is the same in each.

Moreover, the Court finds that the bankruptcy proceedings are not so remote as to be inadmissible. The application for health insurance was made in February 1993, less than 10 years after the decision of the bankruptcy judge.[4] One of the cases primarily relied upon by Strauss for his argument that

the 1982 bankruptcy proceedings are too remote to consider, *Hicks v. Six Flags Over Mid–America,* 821 F.2d 1311 (8th Cir.1987), is not inconsistent with this ruling.[5] In *Hicks* the trial court was dealing with an accident that happened six years prior to the subject accident. *Id.* at 1315. There is no accident at issue in this case, only the intent to deceive. Further, as will be discussed at more length herein, because this is a non-jury trial the time factor is not one that is likely to cause confusion to a jury or unfairness in this proceeding.

As to the third *Beechum* factor, there is no doubt that Strauss was the person who committed the alleged similar act, as found by the Bankruptcy Court.

■ Finally, the Court finds that the probative value of the proposed evidence outweighs its prejudice and that the other factors in Fed.R.Evid. 403 are satisfied. As noted, this is a bench trial, so there are no potential problems of juror prejudice. Even so, if offered into evidence, this Court will only consider the evidence of the bankruptcy proceedings in terms of plaintiff's intent to deceive. *Cf. Dial,* 970 F.2d at 524 (approving introduction of evidence of similar acts where instruction given to jury limiting the consideration of the evidence only as to certain issues); *Weiskopf v. Bond,* 739 F.Supp. 1084, 1086 (E.D.La.1990) (whatever undue prejudice that exists can be minimized through limiting instructions to jury).

In regard to the other requirements of Rule 403, the Court finds that the introduction of the bankruptcy court findings will not confuse the issues, cause delay, waste time or constitute the needless presentation of cumulative evidence.

Therefore, the Court holds that introduction of the findings arising from Strauss' bankruptcy proceedings under Fed.R.Evid. 404(b) is proper.

---

4. The opinion referred to above was signed on September 21, 1983. (Attachment to R.Doc. 71.)

5. The other civil case cited by Strauss in support of this argument, *Dial,* is factually inapposite

because *Dial* dealt with *subsequent* arson incidents, not prior ones. *Dial,* 970 F.2d at 522–23.

B. Rule 608(b) and General Impeachment

 Federal Rule of Evidence 608(b) states, in pertinent part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting a witness' credibility ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness. ...

A trial judge's discretion whether to admit evidence under this rule is "very substantial." *United States v. Farias–Farias*, 925 F.2d 805, 809 (5th Cir.1991).

Under 608(b), courts have found that proof that a witness has lied under oath previously is probative of the weight to be accorded the witness' testimony. *See United States v. Terry*, 702 F.2d 299, 316 (2nd Cir.1983); *United States v. Bagaric*, 706 F.2d 42, 65 (2nd Cir.1983). Additionally, the misconduct need not have created criminal liability or resulted in a conviction. *Id.*

Remoteness of the prior misconduct is also no longer an explicit factor under Rule 608(b) but one for the court to consider in assessing probative value of the evidence offered. *See, e.g., United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir.1989) (upholding cross-examination of disbarment twelve years prior for misappropriating client funds).

In the present case, as set forth above, the probative value of the proposed evidence has already been established. The Court also has rejected the argument that the bankruptcy proceedings are so remote as to affect probative value. Additionally, although the bankruptcy judge's findings apparently did not result in any criminal conviction, if Strauss takes the stand he can be cross-examined as to these findings under Rule 608(b).

Finally, should Strauss testify in such a manner on a material issue as to invite cross-examination with the bankruptcy proceedings, such evidence may be admissible as a general rule of impeachment, separate and apart from Rule 608(b). *United States v.*

*Opager*, 589 F.2d 799, 801–803 (5th Cir.1979) ("Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict ... a witness's testimony as to a material issue of the case.") However, such a ruling must await the actual testimony, if any, of Strauss at trial.

Thus, the Court finds that the findings in the bankruptcy court ruling may be admissible under Fed.R.Evid. 608(b) or, possibly, under the general rules of impeachment.

Accordingly,

**IT IS ORDERED** that defendant's Motion in Limine **BE** and **IS HEREBY DENIED.**